United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good afternoon, counsel. You can't see Judge Jordan because his video camera is not working, but he can hear and we can hear him, so he just asked me to preside today even though he's senior to me. We appreciate your making yourselves available this afternoon for oral argument in this case. I'll now call the case of, no, case number 22-12315, United States v. Duldulao and Santos. Mr. Burns, looks like you've reserved two minutes for rebuttal, is that correct? Correct. You may proceed. Thank you. Good afternoon, your honors, and may it please the court. I'm Thomas Burns and I represent Dr. Santos. Before the May 2019 trial, a newly established law for over 13 years in this circuit that the government could convict doctors either a subjective or objective theory of mens rea, but Rwanda dramatically changed the landscape. Now, there's no crime unless the government can prove that the doctor subjectively knew or intended that his prescription would be unauthorized. Here, especially as to the substantive counts, the jury was given the wrong instruction. It was told it could convict under either an objective or subjective theory of mens rea. That's plainly wrong under Rwand 2, Rwand 3, and Heaton, and I the substantive counts, the first two prongs of Plaintiff Error Review. Let me ask you about the jury instruction on the conspiracy count, though. Doesn't our published opinion on remand in Rwand dispose of that issue? Because the jury instruction was very similar in that case. Deeply problematic. The answer is yes, unless you conclude that the prior panel precedent rule trumps the decision in Rwand 3. So in my, I can't remember my supplemental, I think it was my supplemental reply brief. I said, no, it's United States against High, which is a case from 1998. And that predates, I think it's 1998. And it predates the discourse decision in Rwand 3. And therefore, if you follow that case, then, you know, we win. If you disagree. It seems to me, though, in that case, that the jury instructions in High and this case are, I mean, so I'm sorry, in Rwand in this case are much clearer than they were in High. Would you agree with that? I'm sorry. Yeah, that the instruction in Rwand in this case is much clearer about the need for subjective knowledge than the instruction in High. Uh, I'm not. I'm not sure I, I do agree that I find that this, this area of the way the jury's instructed just very confusing. I feel like the district judge didn't understand that the prosecutor didn't understand that the defense lawyers didn't understand that the jury couldn't have understood it. So that's why we're taking a position that High is the prior panel precedent on this issue. But really, what I'd like to focus on is the substantive counts. Because I do acknowledge that Rwand 3 is a problematic decision for us on the, on the conspiracy count. Here, Rwand 3 says, and the jury instruction that we got in Rwand got is essentially the same. You know, you can see that in my supplemental appendix, which the, the certiorari petition reply brief had, had an appendix that said, like, here are the, the instructions side by side. And they're basically, they're basically the same. So we've, on the substantive counts, we feel like we've satisfied the first two prongs of plain error review. And really, the, the main two theories that the government's advancing to affirm the judgments here are the invited error doctrine and the burden of proof on the substantial rights prong. We think both of those theories are incorrect. And the government's really just trying to repackage and resell its objective theory of malpractice convictions. So let's talk a little bit about the invited error doctrine. Now, in my supplemental reply brief, I acknowledge, like, look, this court has held in the past that when a defendant acquiesces in an instruction, that can lead to an invited error. But that's, invited error doctrine is construed narrowly. Judge Newsom recently wrote that in a case called United States against Burnett, which, unfortunately, I didn't learn of until very recently. So he says, we traditionally construed invited errors narrowly so as to preserve the opportunity for appellate review in close cases. This is, I consider, a very close case. And it, at minimum, should be the, whatever error was invited should be construed narrowly. But I think you should look very closely at the context and how this came to pass. You know, the government had repeatedly said, this is the instruction we want. Trial brief, opening statement, Dr. Chetoff's testimony, closing argument, the instruction itself. One of the things I'd really love you to focus on is what I call the cat out of the bag colloquy. And this is where the district judge is like, I don't get it. I thought you were going to be presenting a case where, you know, a doctor was handing drugs out like candy on a street corner. So what are these two theories? What's this disjunctive nature of it? And how are they, how are they different? And that's where the court initially rules. Like, you know, the government asserts it's disjunctive. The defense says, well, that's what the 11th Circuit case law seems to the district court agrees. So at that point, the ruling has been made. And then when the jury instructions are presented, that's later on. So in our view, this was all kind of hashed out in front of the district court. And one thing that's kind of helpful, I think, is a practical counterfactual. What different thing would have happened if they had said, no, we want an instruction that's different from what we, what's being proposed here. The same instruction would have been given because, you know, an honorable defense lawyer would have said, look, the Circuit precedent says this, and we're bound by Circuit precedent, I just want a different instruction. And that would have not advanced the ball at all, because the district court would have been bound by this court's precedent, not by Sister Circuit's precedent. Rwanda hadn't yet been decided. So we would have been in the same position. This is Judge Jordan. Could you talk about the question of whether or not the jury instruction affected substantial rights? Absolutely. So we've been, the government and I were sort of going back and forth about this. We're not making a structural error argument. We acknowledge that, you know, the substantial rights prong on plain error, we bear that burden. The burden is a reasonable probability of a different result. And that's probability sufficient to undermine confidence in the outcome. We don't have to prove our innocence, we just have to undermine your confidence in the outcome. And here, the evidence just wasn't overwhelming. First of all, in your opinion, you didn't, you know, the prior opinion in 2021, you didn't say that the evidence was overwhelming. There were partial acquittals. The district judge remarked on the verdict's oddity, because she was sort of surprised about like partial acquittals and partial convictions. And she said she was likely to grant a post verdict motion for judgment of acquittal, even though she didn't. We had experts who said, look, what these doctors did, what Dr. prescribing these medications. And then Dr. Santos testified also in his own defense. Now, all of these things that have had the jury been correctly instructed, they could have, you know, latched on to and said, No, we're going to quit the defendants of all of the substantive counts, because there's a, you know, reasonable basis that the doctor had for one of the reasons why we don't think that's the substantial rights, whether we satisfy substantial rights prong. Another thing to consider, I'm going to go slightly over my time, if you don't mind, Judge Pryor to answer that question. You may finish your answer. Yeah, this case is just light years removed from the conduct of other doctors in other cases. So Dr. Juan, and his colleague, they wrote like 300, they prescribed 300,000 pills of this medication, which is an extraordinary sound like they, they actually prescribed so much of the medication that when they stopped prescribing it, the manufacturer of that particular medication had financial problems. And this like what we're talking about here, we're talking about a handful of prescriptions where the doctors are accused of, or, you know, we're convicted on a theory that you didn't spend enough time with this patient, you spent 10 minutes instead of 15, or you didn't touch the patient in the right way, or you didn't fill out the progress report and in the right in the right way. I think we've got your argument, Mr. Burns, thank you. And we'll give you your full time for rebuttal. Thank you, Mr. Weisbrod. It looks like you have four minutes with one minute for rebuttal. Is that right? Yes, Your Honor. Thank you. Good afternoon. May it please the court. My name is David Weisbrod. I represent appellant Dr. Kendrick Daldolau. We actually only have a conspiracy conviction for review, because Dr. Daldolau was either acquitted by the jury or by the district judge at Rule 29 time of all of his substance counts. So this gets us directly into this court's opinion in Ruan 3 and where does Dr. Daldolau stand in regard to that. And so my focus today is on the supplemental authority that we submitted, which is the Khan case out of the 10th Circuit, which was the sister case with Ruan in front of the United States Supreme Court. And the theory is that Ruan changed everything. And what I mean by that is previously, historically, in this circuit, in this district, when a doctor was charged with the illegal distribution of drugs through the prescription process, there was basically a two element test to determine whether or not that prescription was illegal. And that's whether or not it wasn't issued for a legitimate medical purpose or outside the course of what Khan recognized in the 10th Circuit is those two factors are now but part of an overall much larger picture to determine whether or not the doctor subjectively knew that he was issuing scripts in an unauthorized manner. And so it seems to me that the Ruan 3 focus was still on the prongs of legitimate medical practice or legitimate medical purpose or course of professional practice. Because the argument goes, well, the jury instruction would have required the jury to find that the scripts were not issued in or for a legitimate medical purpose. But that's not any longer where we stand in the context of these cases, the Code of Federal Regulations, which promulgated the legitimate medical practice and the I'm sorry, legitimate medical purpose and the course of professional practice. Those are no longer the sole focus of what we are to look at in these cases. And I think Khan gets that a little bit more than Ruan 3. So if in Ruan 3, we're still talking about those two factors as the driving force in these cases and how the conspiracy instruction relates to them, I think that that's the wrong focus compared to what the Supreme Court said in Ruan 2. And so that's my attempt to try and suggest why perhaps we're not bound by the conclusion of Ruan 3 for the conspiracy count against Dr. Dalgalao. A couple other points. We were talking about invited error earlier. The case cited by the government in connection with that supplemental citation, the Mays case, was interesting because it talks about whether or not it would have been futile to raise the issue in the district court. Well, the defendant had objected at one point to Dr. Chetoff's testimony coming in as what the district court described as foundational evidence. The district court allowed that evidence to come in despite striking the rest of Dr. Chetoff's testimony after Dr. Dalgalao. So that objective review of professional practice, again, what was called foundational, was already going to be oh, by the way, there's an out-of-circuit opinion that you might want to rely upon to give a different jury instruction on conspiracy. And the irony of all of that, if I may just finish, I know I'm going over, is that the government wants us to propose to the district court an out-of-circuit opinion, which we know will be rejected, and then come here and argue, oh, by the way, the prior circuit rule here applies, and you lose here, too. So that seems to me sort of a heads-they-win, tails-I-lose situation, and it's perhaps a reason why invited error is not applicable in the totality of the circumstances here. Thank you for allowing me to go over. Thank you. We'll give you your minute back for rebuttal. Appreciate it. Ms. Gershow. Good afternoon, Your Honors, and may it please the Court. I want to start with the conspiracy instruction, and this instruction is substantially, in all material respects, the same as the instruction that this Court held adequately conveyed the mens rea requirement in Ron 3. And so I think that Ron 3 forecloses any argument that there's error in the conspiracy jury instruction. High is not on point. It deals with a totally different jury instruction about a totally different crime, and so this Court should follow Ron here. And it's correct because as Ron 3 recognizes, the mens rea requirement that was instructed for the conspiracy count was willful, which means that they had to know the unlawful purpose of the plan and to willfully join it. And so in order to find the defendants guilty here on the conspiracy counts, the jury had to find that the defendants knew that they were agreeing to prescribe controlled substances outside the usual course of professional practice or not for a legitimate medical purpose. Under either prong, they had to know that what they were doing was unlawful. So unless the Court is in. Putting aside Ron 3 for a second, what do you think the impact of an incorrect substance of instruction is on the conspiracy instruction? Well, in Ron 3, this Court, and I know you just said to put that aside, but the Court said that the error in the jury instruction did not impact the correct jury instruction for the conspiracy charge. But here, the important thing is that the jury instruction that was given here is completely different than the jury instruction that was given in Ron as to the elements of the offense. In Ron, the jury was instructed that to find the defendant guilty, it had to one, find the defendant dispense controlled substances. Two, the defendant did so knowingly and intentionally. And three, that the defendant did not have authorization. And in Ron 3, this Court explained, which is correct, that the defendant did so knowingly connected the mens rea only to the dispense of controlled substance, not to the accept as authorized clause. Now let's compare that to the substantive jury instruction that was given here. The instruction that was given here was that the jury had to find that the defendant dispense of controlled substances as charged. And two, that at the time of the dispensing, the defendant knew that he was distributing and dispensing a controlled substance, not for legitimate medical purpose, and not in the usual course of professional practice. And when you read that second element, that mens rea of knowing applies to the entire thing. That's the most natural and grammatical reading of this jury instruction. And so this jury instruction comports with Ron's requirement that the defendant has to know that he is distributing the controlled substances, not in the usual course of professional practice. And the instruction that was given that said that the jury that outside the usual course of professional practice is judged objectively doesn't make the elements of the instruction on the elements of the offense wrong or inconsistent with Ron, because in Ron 2, the Supreme Court said legitimate medical purpose and outside the usual course of professional practice are objective criterion. So what this jury instruction instructed, which is completely inconsistent with the requirements of Ron 2, is that to convict the defendant under the usual course of professional practice, the defendant had to know that he was prescribing controlled substances in a way that did not conform with the objective standard for prescribing controlled substances. And so the jury instruction here is not erroneous, and it's certainly not plainly erroneous. They haven't pointed to a single case, nor has there been one that says that this type of jury instruction doesn't adequately convey the mens rea. And then as to the point that even if you'd said the objective instruction wasn't correct, you shouldn't even be reviewing that under the invited error doctrine, because that is the instruction that they asked for in their proposed jury instructions. Well, didn't the government also ask for that same instruction? Actually, so the interesting thing is that the government asked for instruction that both object, that both legitimate medical purpose and outside the course of professional practice were objective standards. And again, that's the, that instruction that had been given is completely consistent with what the court said in Ron 2, which is that you have to know that you are doing this in an objectively unauthorized manner. And so the instruction that the United States requested was correct. And of course, that's our position that the instruction that was given was correct, and it's certainly not plainly incorrect. But even if the court were to say that this jury instruction wasn't correct, and again, just backing up too, I just want to make the point that jury instructions don't have to be perfect. And here, these jury instructions if they were not worded exactly as we would word them today, given Ron 2, they're certainly, they would pass muster under a preserved error standard, and they certainly pass muster under plain error. And then turning to the substantial rights prong, they have to show a reasonable probability. And I'm just going to focus on Santos here, because I think the conspiracy due to law was only convicted under the conspiracy instruction that's clearly foreclosed by Ron 3. But so what we have to show on the substantive counts is there were only three counts that he was convicted of. The jury very carefully parsed through the evidence and determined that these three counts that he was convicted of found him guilty. And if you watch the video of these three counts, what you will see is a doctor who is acting as a drug dealer and not a doctor who is acting as a doctor who just maybe made a few mistakes. He saw the patients together, the CI told Dr. Santos that his girlfriend was stealing her medication, his medication, they got controlled substances anyway. The second time when he came back, when they came back and the CI wasn't there, he gave a prescription for the CI anyway. He documented in his chart that he had seen the patient, which he on his own testimony admitted was a mortal sin. He then later gave the basically sold the prescriptions to the CI by giving him three prescriptions in advance and charging him for each visit. And then there's just more general testimony that shows that he knew that he was acting in an unauthorized manner, that he knew he was prescribing outside the usual course of professional practice. And that includes the fact that he said things to the CI at the first is like, I can't up your dosage, because you haven't here in three months and I can't justify that to DEA. Not you don't need it, I can't justify it to DEA. Meaning I know what DEA standards are, and I'm concerned about getting caught. And that becomes very apparent when after his wife's clinic gets raided, and he comes in and he says, hey, I've got to start reducing the amount of controlled substances I'm prescribing. And Gonzalez says, you can't just start reducing people's medications, they can have all kinds of problems. And Sanchez did it anyway. And what that made clear is he was worried about getting caught by the DEA, which means he knew that he was prescribing these in an unauthorized manner. And so the burden is on them to show what is just Jordan, to what extent and how do we factor in the acquittals on a number of the counts, for example, count five and count six for Santos. I think he factored in that the jury was carefully weighing the evidence and it didn't get to the point where they started doing some really egregious stuff in the videos and, Sanchez start seeing the patients together after he says, they say, she's stealing my medication. And I think what you factor in is that the jury was like, we're not going to convict him just like he didn't maybe do enough of an exam. We want to see evidence that he really knew what he was doing was wrong, that he was really deviating from the standard of care, which more likely it is to be circumstantial evidence that they knew that they were prescribing them not for legit for not for usual professional practice. And so I think what you're seeing here is as his behavior deviated more and more from the standard of the governing practice of medicine, that the jury was then convinced that what he had done rose to the level of crime. And it's also important to talk about the way that this case was presented to the jury. We didn't present this case as a malpractice case. We said things like the doctors ignoring these red flags shows their intent. This is not a malpractice case. This is a case. This is a criminal case about criminal intent that the case that we presented was that he was acting as a drug dealer. And that's the case that we proved. And so unless the court has any further questions, I would ask that it affirm the convictions. Thank you, Mr. Rebuttal, Mr. Burns. You're muted, sir. Judge Jordan, you were asking about the connection between substantive counts and the conspiracy count. It is a little bit circular. And I think the government is giving juries maybe more credit for being like extraordinary textualist than they really are. You know, here are these substantive counts. And we know that the instruction on the substantive count is wrong. One, three says that. And then we're asking the jury to parse the instructions in such a way that even though they were instructed incorrectly about the substantive count, somehow they're able to get it right through the conspiracy count. That's why I think one three as the conspiracy count isn't correctly decided. And one of the things that you should probably keep a close eye on is, is one three is now up for there's a tertiary petition that was filed. It's number two dash 1175. The Solicitor General just filed her brief in opposition of like a week ago. And you might want to read those papers to stay abreast of how that is going. But there the issue is, you know, who got it right? Did the 10th Circuit get it right? Or did this court get it right on the conspiracy convictions? There are the government's talking about the videos and the evidence of the substantive count convictions. Those to me are sufficiency arguments. They're not substantial rights from arguments. We're not talking about the sufficiency of the evidence right now. We're talking about whether you your confidence in the result has been undermined. And here we've got substantive count instructions that are wrong, a conspiracy count instruction that's kind of iffy. And this expert, Dr. Tate, who just got the law upside down, and we're saying, No, we're still confident in this result, even though so many things went wrong in this trial. And I don't think that's the right outcome. I think I think your confidence in the outcome should be undermined. You should vacate, at minimum, the substantive count convictions and remand for the jury for a correctly charged jury to decide this case in a fair fight between the government and the defendants. Thank you. Mr. Weisbrot. Yes, thank you, Your Honor. The government said something to the effect that no court has said the jury instruction, similar to what was made below, had been ruled improper for conspiracy. But it has been. That's basically what Kahn said. And they're tied together. If, in fact, the distribution counts are improperly instructed because of the objective view of the professional practice prong, then the conspiracy, which relies upon that, is also incorrectly instructed. And that's basically what Kahn said. And that's in light of the fact that we now look at the totality of the evidence to determine the state of mind of the defendant. Would it make a difference in Dalda Lau's case? Absolutely. There was video. There was audio. There was expert testimony. There were patient about red flags that the government mentioned. All that red flag testimony is to allow the expert, in this case, Chaytoft, to say that that doesn't comport with the usual court's practice. It's the heart of the government's case. And yes, why the change in Braun is so important to what happened below here. Thank you. And one last thing. I appreciate the court rescheduling this notice for August when I was on a trip, or was going to be on a trip that had been previously planned. And you indulged me. And I appreciate that graciousness and wanted to make sure it was recognized publicly today. Thank you. Thank you, counsel. Court is adjourned. Thank you.